Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| VÍCTOR GABRIEL ROSARIO DURÁN <br><br> Recurrida <br><br> v. <br><br> FIRSTBANK PUERTO RICO Y OTROS <br><br> Peticionarios | KLCE202400055 | CERTIORARI Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón <br><br> Caso Núm.: BY2022CV03167 (505) <br><br> Sobre: DESPIDO INJUSTIFICADO (LEY NÚM. 80) Y OTROS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de febrero de 2024.

La parte peticionaria, FirstBank Puerto Rico, acude ante nos de una *Resolución* emitida y notificada por el Tribunal de Primera Instancia, Sala de Bayamón, el 3 de enero del año en curso. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* una *Solicitud de Sentencia Sumaria Parcial* presentada por la parte peticionaria.

Los hechos esenciales para comprender la determinación que hoy alcanzamos se incluyen a continuación.

**I.**

El 20 de junio de 2022, el aquí recurrido, Víctor Gabriel Rosario Durán, instó una *Querella* al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*, en contra de FirstBank. En el pliego, alegó que, el 18 de junio de 2021, fue despedido injustificadamente del puesto que ocupaba en la referida institución bancaria. Aseveró que su cesantía fue motivada por un

Número Identificador

SEN2024_____

viaje que realizó fuera de sus horas laborables, durante el tiempo de la pandemia del COVID-19. En virtud de lo anterior, le solicitó al foro primario que condenara a la parte peticionaria a pagarle la mesada que le correspondía conforme a la Ley Núm. 80 sobre despidos injustificados de 30 de mayo de 1976, 29 LPRA sec. 185a *et seq.* Además, peticionó el pago de dos incentivos por ejecución, de los cuales era presuntamente acreedor, y una suma por costas, gastos y honorarios de abogado.

El 15 de agosto de 2022, FirstBank contestó la querella. En el escrito, relató que, cuando el supervisor del señor Rosario Durán advino en conocimiento de que este planificaba viajar al estado de Florida para participar en el Día Nacional de la Salsa, le orientó que el protocolo de la institución bancaria, sobre viajes durante la pandemia, requería que los empleados, al regresar, se mantuvieran fuera de sus labores por un periodo de cinco (5) días, hasta que se pudieran realizar una prueba de COVID-19. Ante ello, el supervisor no autorizó al peticionario a ausentarse los días posteriores al viaje. No obstante, el 23 de abril de 2021, el señor Rosario Durán realizó el referido viaje y se ausentó a su trabajo del 26 al 30 de abril de dicho año.

Al amparo de lo expuesto, FirstBank afirmó que las referidas acciones eran razón suficiente para justificar el despido del recurrido, por lo que no le cobijaba la protección y los beneficios de la Ley Núm. 80, *supra*. Además, resaltó que, previo al mencionado evento, el señor Rosario Durán fue amonestado en dos ocasiones por violaciones a las políticas de la Institución, y por desempeñar sus labores de forma deficiente. Por otra parte, adujo que no le adeudaba ningún pago al recurrido.

Tras varias incidencias procesales, el 30 de junio de 2023, la parte peticionaria presentó una *Solicitud de Sentencia Sumaria Parcial.* En la misma, planteó que la evidencia presentada demostró

que el despido del señor Rosario Durán estuvo justificado. Afirmó que no había disputa en cuanto a que su supervisor le indicó, en dos ocasiones, que no estaba autorizado a ausentarse y, aun así, este ignoró las referidas instrucciones y se fue de viaje.

Para sustentar lo anterior, FirstBank anejó a su petitorio una deposición tomada al señor Rosario Durán el 24 de abril de 2023. En la misma, el recurrido admitió que cuando le informó a su anterior supervisor, William Rivera, sobre el viaje para el Día Internacional de la Salsa, este le expresó por teléfono, y posteriormente por correo electrónico, que no podía irse de viaje, puesto que, según la política de la institución bancaria durante el COVID-19, implicaba que estaría fuera del trabajo por unos días. No obstante, luego de que se le impartió la mencionada instrucción, este procedió a comprar el pasaje para viajar al evento.[1]

A su vez, durante la deposición, el señor Rosario Durán manifestó que el señor Rivera lo llamó el viernes, 23 de abril de 2021, bajo la creencia de que no se iba de viaje, para que trabajara el siguiente sábado y diera apoyo en las tarjetas de crédito. Sin embargo, el recurrido le respondió que no podía ir a trabajar porque se iba de viaje. El señor Rosario Durán explicó que, ese mismo día, su supervisor se enteró de que, en efecto, iba a asistir al Día Nacional de la Salsa, y le remitió un correo electrónico en el que hizo referencia a la política de viaje antes discutida. En cuanto a la referida política, el señor Rosario Durán declaró que se enteró de la misma antes del 23 de abril de 2021, pero que no recordaba cuánto tiempo antes.[2]

Igualmente, el recurrido expresó en su testimonio que tenía conocimiento de que el Manual de Empleado detallaba que la

---

[1] Apéndice del recurso, págs. 330-334.
[2] Íd., págs. 337-338.

licencia de vacaciones la tenía que aprobar el Banco y que los empleados no podían tomar vacaciones cuando quisieran.[3]

Además, FirstBank juntó en su solicitud de sentencia sumaria un documento intitulado, *Plan de Control de Exposición a COVID-19 para empleados de FirstBank Puerto Rico*, el cual disponía en su inciso V(D) la mencionada política de viaje. La misma establecía lo siguiente:

> Todo empleado que viaje fuera de Puerto Rico (barco o avión) deberá informar a su supervisor, fecha de salida y de regreso, así como el país o estado. En cualquier caso, a su regreso, el empleado se mantendrá en cuarentena de 14 días como medida cautelar. El empleado tendrá la opción de utilizar su licencia de vacaciones durante ese periodo o si es elegible para trabajo remoto, discutir y acordar con el supervisor el plan de trabajo durante ese periodo de tiempo. De no tener balance de vacaciones y no ser elegible para trabajo remoto, el tiempo de cuarentena será sin sueldo. El supervisor informará estos casos al Departamento de Beneficios de Recursos Humanos.[4]

Ahora bien, el inciso V(G) de dicha política destaca que la licencia de vacaciones aplicaría bajo las mismas normas que en el Manual del Empleado.[5]

Por otra parte, la institución bancaria unió a su petitorio unos correos electrónicos entre el señor Rosario Durán y su anterior supervisor, con fecha del 23 de abril de 2021.[6] Según el expediente, la referida interacción comenzó con el envío de la política de viaje por parte del señor Rivera al recurrido, luego de que se enteró que, a pesar de las instrucciones impartidas, este se iba de viaje.[7] Ante el envío de la mencionada política, el señor Rosario Durán respondió, entre otras cosas, lo siguiente:

> […]
>
> Comprendo que conforme al protocolo previamente notificado no se prohíbe el viaje, sino que debo cumplir con las condiciones de regreso. Por ello, estaré presentado la prueba de PCR y aceptó(sic) cualquier

---

[3] Apéndice del recurso, pág. 341.
[4] Íd., pág. 368.
[5] Íd., pág. 370.
[6] Íd., págs.354-356.
[7] Íd., págs.355-356.

descuento de nómina por los días comprendidos entre el 26 al 30 de Abril [*sic*] de ser necesario, ante la necesidad de guardar cuarentena por un mínimo de 5-7 días antes de la prueba PCR.[8]

Así, pues, su anterior supervisor contestó con el correo electrónico que sigue:

Como es de su conocimiento hace tres semanas cuando me enter[é] de sus intenciones de viajar al estado de la Florida por una invitación al d[í]a nacional de la salsa, se le explic[ó] el protocolo establecido por el banco para los viajes. Se le dijo que no estamos viviendo en condiciones normales por el COVID-19.

Se le explic[ó] que este viaje estaría afectando su área de trabajo ya que tendría que estar fuera de sus labores por m[á]s de 5 días laborables en lo que se pudiera realizar la prueba de PCR, en esa conversación se le notific[ó] que no estaba autoriz[ado] a estar fuera de su[s] funciones durante la semana del 26 al 30 de abril.

Le señal[o] que su trabajo primario es First Bank y esta salida fuera de Puerto Rico afecta sus funciones laborable[s].[9]

Finalmente, el recurrente manifestó, entre otras cosas, que entendía que sus funciones tenían mínima interacción con terceros, por lo que podía trabajar remoto, en lo que esperaba a realizarse la prueba de COVID.[10]

FirstBank, también, incluyó a su solicitud dos amonestaciones escritas dirigidas al recurrido. La primera amonestación se le remitió el 26 de diciembre de 2019, por incumplir con el código de conducta ética.[11] En la misma, se le indicó que se le realizó una investigación por haber recibido paga por tiempo no trabajado, de la cual surgió que tenía un segundo empleo que no contaba con la aprobación requerida. Además, se detalló que el recurrido incurrió en falta de diligencia por no comunicar de inmediato ciertas ausencias y tardanzas. A su vez, se resaltó que, durante las entrevistas realizadas en la referida investigación, el señor Rivera Durán mintió extensamente y

---

[8] Apéndice del recurso, pág. 355.
[9] Íd., pág. 354.
[10] Íd.
[11] Íd., págs.381-382.

demostró un comportamiento irrespetuoso.[12] Ante ello, se le advirtió que "[d]e repetirse [esa] o cualquier otro tipo de falta a sus deberes y responsabilidades, [...] podría estar sujeto a medidas disciplinarias más severas que podrían incluir la terminación de su empleo".[13]

La segunda amonestación se le remitió el 20 de noviembre de 2020. En ella, se reprendió al recurrente por unas deficiencias en sus ejecutorias diarias, y se le explicó que dichas acciones eran consideradas una falta en las responsabilidades de su puesto. Además, se le apercibió que, de repetirse, se referiría a Recursos Humanos, lo cual podría conllevar medidas disciplinarias.[14]

En virtud de lo anterior, FirstBank le solicitó al foro primario que declarara con lugar la *Solicitud de Sentencia Sumaria Parcial* instada.

El 7 de agosto de 2023, el recurrido se opuso a la sentencia sumaria parcial. Argumentó, contrario a la parte peticionaria, que lo que demostró la prueba fue que FirstBank se negó a aplicar su propio protocolo. Ello, puesto que el mismo, únicamente, proponía una serie de alternativas para el empleado que saliera de viaje durante la pandemia. Igualmente, arguyó que sus actos no constituyeron insubordinación, y no ameritaban que fuese cesanteado de su empleo. Más aún, cuando fue diligente en informarle a su anterior patrono sobre su viaje, a pesar de que se llevó a cabo fuera de horas laborables, cumplió con enviar sus resultados negativos a COVID-19 y regresó a su trabajo al transcurrir tiempo de cuarentena requerido. Por otra parte, el señor Rosario Durán resaltó que la carta de despido se le entregó, luego de tres meses de haber regresado a su trabajo. En apoyo a su posición, anejó a su escrito la documentación que sigue:

---

[12] Apéndice del recurso, pág. 381
[13] Íd., pág. 382.
[14] Íd., pág. 383.

1. Determinación del Departamento del Trabajo, dirigida al señor Rosario Durán con fecha del 31 de diciembre de 2021. Mediante el referido dictamen, se le indicó al recurrido que fue despedido de su empleo sin existir razón aparente para su despido.[15]

2. Correos electrónicos con fecha 23 de abril de 2021, entre el señor Rosario Durán y el señor Rivera.[16]

3. Correo electrónico con fecha del 3 de mayo de 2021, remitido por el recurrido a Miguel Hernández y copiado al señor Rivera, en el cual incluyó sus resultados negativos a COVID-19, e indicó que estaba en espera de instrucciones para integrarse a trabajar.[17]

4. Correo electrónico con fecha del 3 de mayo de 2021, remitido por el señor Rivera al señor Rosario Durán y copiado al señor Hernández, mediante el cual le informa que debe comunicarse con el señor Hernández para que le entregue la ruta de Guaynabo.[18]

5. Correo electrónico con fecha del 24 de abril de 2021, mediante el cual se le recordó al recurrido que su cita para la segunda dosis de la vacuna de COVID-19 era el 27 de abril de 2021.[19]

6. Tarjeta de vacunas del COVID-19.[20]

7. Resultado negativo a prueba de COVID-19, fechado el 26 de abril de 2021.[21]

8. Documento intitulado *Evaluación de Desempeño 2020*.[22]

Posteriormente, el 8 de agosto de 2023, el señor Rosario Durán presentó una *Moción*, mediante la cual solicitó incluir como anejo a su oposición, la deposición que se le tomó el 24 de abril de 2023.

Evaluadas las posturas de las partes, el 3 de enero de 2024, el tribunal de instancia emitió la *Resolución* que nos ocupa. Mediante el referido dictamen, realizó las determinaciones de hechos siguientes:

---

[15] Íd., pág. 282.
[16] Íd., págs. 283-286.
[17] Íd., págs. 287-288 y 292.
[18] Íd., pág. 287.
[19] Íd., pág. 289.
[20] Íd., pág. 291.
[21] Íd., págs. 293-294.
[22] Íd., págs. 295-310.

1. El 11 de octubre de 2018, el querellante comenzó a trabajar en FirstBank como gestor de cobro.

2. Mientras el querellante trabajaba para FirstBank, también se desempeñaba como músico.

3. Como gestor de cobro, las funciones del querellante incluían gestionar cobros fuera de las sucursales de la parte querellada.

4. El 26 de diciembre de 2019, el querellante recibió una amonestación escrita por incumplir con el Código de Ética de FirstBank al recibir paga por tiempo no trabajado y por contar con un segundo empleo no aprobado por FirstBank.

5. El 20 de noviembre de 2020, el querellante recibió una segunda amonestación por deficiencias en la ejecutoria de su trabajo.

6. En marzo de 2021, el querellante recibió una invitación de su manejador para participar como invitado en el Día Nacional de la Salsa.

7. El 9 de abril de 2021, el querellante compró pasaje para volar el 23 de abril de 2021 de San Juan a Orlando a través de Southwest Airlines.

8. El querellante se comunicó con Miguel Hernández para discutir el asunto del viaje y éste le indicó que se comunicara con su supervisor, William Rivera.

9. Durante la primera semana de abril, el querellante se comunicó mediante llamada telefónica con William Hernández[*sic*] y este le indicó que no estaba autorizado a realizar el viaje ya que afectaría su área de trabajo porque tendría que estar fuera de sus labores por más de cinco días laborables antes de realizarse una prueba PCR para detectar el virus de COVID-19.

10. Al 23 de abril de 2021, Miguel Hernández y William Rivera entendían que el querellante no se iba de viaje, pues esa fue la instrucción impartida.

11. El 23 de abril de 2021, el querellante recibió una llamada a eso del mediodía de Miguel Hernández, mediante la cual lo convocó para trabajar el día siguiente. El querellante le respondió que se iba de viaje.

12. William Rivera le reiteró al querellante que no estaba autorizado para irse de viaje y que estaba convocado para trabajar el día siguiente, sábado, 24 de abril de 2021.

13. Luego de hablar por teléfono con el querellante, el 23 de abril de 2021, William Rivera le envió al querellante un correo electrónico en el cual hizo referencia a la política de viajes durante la Pandemia del

COVID-19 y le reiteró que no estaba autorizado a realizar el viaje, debido a que no se le permitiría ausentarse de sus labores durante la semana del 26 al 30 de abril de 2021, mientras cumplía con el asilamiento establecido por el protocolo para el manejo de la pandemia del COVID-19 de la empresa.

14. El protocolo para el manejo de la pandemia del COVID-19 de FirstBank ("Protocolo") establecía en su Sección 5(D) que:

> Todo empleado que viaje fuera de Puerto Rico (barco o avión) deberá informar a su supervisor, fecha de salida y de regreso, así como el país o estado. En cualquier caso, a su regreso, el empleado se mantendrá en cuarentena de 14 días como medida cautelar. El empleado tendrá la opción de utilizar su licencia de vacaciones durante ese periodo o si es elegible para trabajo remoto, discutir y acordar con el supervisor el plan de trabajo durante ese periodo de tiempo. De no tener balance de vacaciones y no ser elegible para trabajo remoto, el tiempo de cuarentena será sin sueldo. El supervisor informará estos casos al Departamento de Beneficios de Recursos Humanos.

15. El querellante compró su pasaje luego de William Rivera indicarle que no podía hacer el viaje.

16. Al momento de recibir la política de William Rivera, ya el querellante conocía de la misma.

17. El Querellante realizó el viaje no autorizado.

18. El Manual de Empleado de FirstBank dispone que el banco tiene que aprobar las vacaciones y que los empleados tienen que someter su plan de vacaciones a principio de año.

19. El plan de vacaciones sometido por el Querellante para el año 2021 no incluyó el viaje a Orlando para el mes de abril.

20. El querellante fue despedido de su empleo con FirstBank el 18 de junio de 2021.[23]

Ahora bien, el referido foro concluyó que los hechos siguientes estaban en controversia:

1. Si el despido del querellante fue justificado según establecido en la Ley Núm. 80-1976, 29 LPRA sec. 185a *et seq* y la jurisprudencia aplicable.

---

[23] Apéndice del recurso, págs. 8-10.

2. Si el viaje realizado por el querellante al estado de la Florida, EE.UU. se llevó a cabo durante horas laborables.

3. Si las labores realizadas por el querellante como gestor de cobro en FirstBank podían realizarse de forma remota durante el término de aislamiento establecido en el protocolo para el manejo del COVID-19 de la empresa.[24]

Al amparo de ello, el foro primario declaró *No Ha Lugar* la *Solicitud de Sentencia Sumaria Parcial* presentada por la parte peticionaria.

Inconforme, el 16 de enero de 2024, FirstBank presentó este recurso. En el mismo, hizo los siguientes planteamientos:

Erró el Honorable TPI al no desestimar la causa de acción por despido injustificado cuando de la faz de sus propias determinaciones y de la casuística aplicable, el despido del Querellante fue justificado.

Erró el Honorable TPI al determinar que existían controversias de hecho, al no dar por incontrovertido el hecho #23 presentado por FirstBank y al sustituir el criterio operacional de FirstBank de cómo manejar su negocio, por su propio criterio.

Habiendo examinado el expediente que nos ocupa, procedemos a delimitar el trasfondo normativo aplicable.

**II.**

**A. *Certiorari***

El recurso de certiorari está regulado por nuestro ordenamiento procesal civil. En lo relacionado al referido recurso, es sabido que se define como un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las decisiones de un tribunal inferior. 32 LPRA sec. 3491; *Rivera et al v. Arcos Dorado et al*, 2023 TSPR 65, 212 DPR ___ (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al v. BBVAPR,* 185 DPR 307, 337 (2012). En esencia, este mecanismo procesal permite al foro revisor corregir algún error cometido por el tribunal de menor jerarquía. *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2016). El referido recurso es uno de carácter discrecional. Esta discreción

---

[24] Apéndice del recurso, pág. 10.

ha sido definida jurisprudencialmente "como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

Cabe señalar, que el auto de *certiorari* está delimitado por la Regla 40 de este Tribunal. Mediante la misma se establecen una serie de criterios que ayudan a dirigir el juicio de este Foro, en la decisión de expedir o denegar el auto solicitado. Dichos criterios reglamentarios son los siguientes:

> A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B) Si la situación de los hechos planteada es la más indicada para analizar el problema.
>
> C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40.

En cuanto a la facultad discrecional de denegar o expedir el auto solicitado, el tribunal, de forma comedida, puede inclinarse a expedir el recurso y adjudicarlo en sus méritos. Al tomar la referida decisión, el foro revisor asume jurisdicción sobre el asunto expuesto ante su consideración. Así pues, revisa e interviene con las decisiones del foro recurrido, para auscultar que estas sean justas y conforme a la normativa aplicable. *Negrón v. Srio. de Justicia,*

supra. Por otra parte, la Ley de la Judicatura confiere jurisdicción a este tribunal para revisar como cuestión de derecho, las sentencias finales del Tribunal de Primera Instancia, así como las decisiones finales de los organismos y agencias administrativas y, de forma discrecional, cualquier otra resolución u orden dictada por el Tribunal de Primera Instancia. 4 LPRA sec. 24(u).

**B. Ley de Procedimiento Sumario de Reclamaciones Laborales**

Por otra parte, la Ley Núm. 2 de 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.*, instituye un procedimiento sumario de adjudicación de pleitos laborales dirigidos a la rápida consideración y adjudicación de aquellas reclamaciones de empleados contra sus patronos relativas a salarios, beneficios y derechos laborales. En consideración al interés público, ciertas disposiciones estatuidas en la aludida ley son más favorables al obrero que al patrono. *Rivera v. Insular Wire Products Corp.*, 140 DPR 912, 922 (1996).

Así, pues, la naturaleza sumaria del procedimiento bajo la Ley Núm. 2, *supra*, responde a la política pública de "abreviar el procedimiento de forma que sea lo menos oneroso posible para el obrero*". Dávila, Rivera v. Antilles Shipping, Inc.*, 147 DPR 483, 492 (1999). Por ello, solo se ha permitido que este Tribunal revise resoluciones interlocutorias provenientes de un procedimiento sumario al amparo de la referida ley, cuando dicha resolución sea dictada sin jurisdicción, de forma ultra vires, o en casos extremos en los cuales los fines de la justicia requieran la intervención de este Tribunal. En este último supuesto, se permite revisión apelativa cuando la "revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tenga el efecto de evitar una "grave injusticia"". *Dávila, Rivera v. Antilles Shipping, Inc.*, *supra*, pág. 498.

Nuestro Tribunal Supremo ha sido enfático respecto a dicha facultad limitada para revisar determinaciones interlocutorias en casos instados al amparo de la Ley Núm. 2, *supra*. Véase, *Díaz Santiago v. PUCPR et al.*, 207 DPR 339, 348-349 (2021); *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 733; *Aguayo Pomales v. R & G Mortg.*, 169 DPR 36, 45-46 (2006); *Alfonso Brú v. Trane Export, Inc.*, 155 DPR 158, 171 (2001). La razón de ser de esta norma general de abstención es evitar las dilaciones que normalmente las revisiones de determinaciones interlocutorias conllevan, lo que precisamente derrotaría el fin perseguido por el procedimiento laboral sumario. *Dávila, Rivera v. Antilles Shipping, Inc.*, supra, pág. 498.

**C. Ley Sobre Despidos Injustificados, Ley Núm. 80 de 30 de mayo de 1976**

Sabido es, que la Ley Núm. 80, *supra,* protege a los empleados de las actuaciones arbitrarias del patrono, porque les provee remedios económicos que desalienten los despidos injustificados.

Su artículo primero, 29 LPRA sec. 185a, establece que: (1) todo empleado, el comercio, industria o cualquier otro negocio o sitio de empleo y (2) contratado sin tiempo determinado y mediante remuneración de alguna clase, tiene derecho a recibir una indemnización de su patrono cuando lo despide sin justa causa. El resarcimiento al que tiene derecho el empleado es la mesada y constituye un remedio exclusivo, cuando el despido es injustificado. No obstante, no existe una prohibición absoluta en contra del despido. Los empleados pueden ser despedidos por justa causa. La Ley Núm. 80, *supra,* cumple los dos propósitos primordiales de: (1) desalentar la práctica de despedir a empleados sin justa causa y (2) proveer a los empleados remedios consustanciales a los daños que les ocasiona el despido injustificado. *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 770-771 (2022).

Aunque la Ley Núm. 80, *supra,* no define concretamente lo que constituye despido injustificado, si expone ilustrativamente las instancias en las que se justifica el despido. El Art. Núm. 2, 29 LPRA sec. 185b, establece como justa causa, razones atribuibles a la conducta del empleado como que: (1) ha exhibido un patrón de conducta impropio o desordenado; (2) no ha cumplido con sus labores de manera eficiente; (3) ha realizado tarde o negligentemente su trabajo, o en violación a las normas aplicables, o (4) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento, los cuales le han sido suministrados oportunamente. Sin embargo, no se considera que existe justa causa, cuando el despido es producto del capricho del patrono y no hay una razón relacionada al buen y normal funcionamiento del establecimiento. La ausencia de razonabilidad en las exigencias que el patrono impone al empleado puede convertir el despido en injustificado. *Ortiz Ortiz v. Medtronic,* supra, págs. 771-772.

La enumeración de escenarios incluidos en la Ley Núm. 80, *supra,* no es taxativa. La ley no dispone un mínimo de amonestaciones previas a que el patrono pueda despedir a un empleado justificadamente, ni exige que se haga de determinada forma. Tampoco establece un código de conducta con una lista de faltas claramente definidas, al igual de las sanciones a que cada una corresponde. No obstante, todo contrato de empleo contiene expresa o implícitamente que el empleado tiene que cumplir con los deberes del mismo de forma competente. Los patronos pueden aprobar reglamentos internos y establecer las normas de conducta en el lugar de trabajo que estimen necesarias. Los empleados estarán sujetos a su cumplimiento, siempre y cuando sean razonables. Las violaciones de las normas del empleo son justa causa para el despido, cuando el patrono demuestra que: (1) las reglas

establecidas para el funcionamiento del establecimiento son razonables, (2) le suministró una copia escrita de dichas normas al empleado, y (3) el empleado las violó en ocasiones reiteradas. *Ortiz Ortiz v. Medtronic,* supra, págs. 773-774.

La Ley Núm. 80, *supra,* establecía la presunción de que todo despido es injustificado. No obstante, la Ley de Transformación y Flexibilidad Laboral eliminó la frase que le impone el peso de la prueba al patrono. Sin embargo, los empleados contratados con anterioridad a la vigencia de esta enmienda continuarán disfrutando los mismos derechos y beneficios que tenían previamente. *Ortiz Ortiz v. Medtronic,* supra, págs. 774-775.

### D. Sentencia Sumaria

Finalmente, es menester destacar que la sentencia sumaria promueve una solución justa, rápida y económica para litigios de naturaleza civil en los que no hay controversia genuina sobre hechos materiales que componen la causa de acción. *Birriel Colón v. Econo y otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Acevedo y otros v. Depto. Hacienda y otros,* 2023 TSPR 80, 212 DPR ___ (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece que la sentencia sumaria procede cuando las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia, acreditan que no existe una controversia real y sustancial respecto a algún hecho esencial y material. *González Santiago v. Baxter Healthcare, supra,* pág. 291.

El tribunal podrá dictar sentencia sumaria a favor del promovente, sin necesidad de celebrar un juicio, si no existe controversia de los hechos materiales que motivaron el pleito y únicamente resta aplicar el derecho a los no controvertidos. *González Meléndez v. Mun. San Juan et al,* 2023 TSPR 95, 212 DPR ___ (2023)*; Acevedo y otros v. Depto. Hacienda y otros,* supra; *Roldán*

*Flores v. Soto Lambert*, 199 DPR 664, 676 (2018). La sentencia sumaria únicamente procede cuando el derecho aplicable lo justifica. La Regla 36.3 de Procedimiento Civil, *supra,* dispone los requisitos con los que debe cumplir una moción de sentencia sumaria. *Oriental Bank v. Perapi et al,* 192 DPR 7, 25 (2014).

La parte promovente de la moción de sentencia sumaria tiene que desglosar los hechos sobre los que alega no existe controversia. Además de especificar para cada uno la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. *Roldán Flores v. Soto Lambert,* supra, pág. 676; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010). Mientras que, la parte que se opone a una moción de sentencia sumaria tiene que demostrar que existe controversia en cuanto a algún hecho material. Se considera un hecho material aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Roldán Flores v. Soto Lambert,* supra. Para ello, el promovido deberá presentar una contestación detallada y específica, y refutar los hechos que entiende que están en disputa con evidencia sustancial. *Birriel Colón v. Econo y otros,* supra; *Abrams Rivera v. E.L.A.,* 178 DPR 914, 933 (2010). Si, al contrario, asume una actitud pasiva y descansa únicamente en sus alegaciones, se expone a que se dicte sentencia sumaria en su contra sin la oportunidad de un juicio en su fondo. *León Torres v. Rivera Lebrón,* 204 DPR 20, 43-44 (2020).

Cualquier duda no es suficiente para derrotar la procedencia de una moción de sentencia sumaria. La duda existente tiene que permitir concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes. Los tribunales solo podemos concluir que existe una controversia real y sustancial en cuanto a un hecho material, cuando el oponente presenta prueba que podría inducir a un juzgador racional a resolver a su favor. *Oriental Bank v. Perapi et al,* supra, pág. 26.

La sentencia sumaria tampoco procede, si existen alegaciones afirmativas en la demanda que no han sido refutadas y de los documentos que acompañan la moción de sentencia sumaria surge controversia sobre algún hecho material y esencial, o cuando como cuestión de derecho no procede el remedio sumario. *Oriental Bank v. Perapi et al,* supra, págs. 26-27.

El tribunal apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. No obstante, al revisar la determinación del Tribunal de Primera Instancia, únicamente podrá considerar los documentos que se presentaron ante ese foro. Las partes no podrán traer en apelación evidencia que no fue presentada oportunamente ante el Tribunal de Primera Instancia, ni esbozar teorías nuevas o esgrimir asuntos nuevos. El tribunal apelativo únicamente puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales y si el derecho se aplicó correctamente. Sin embargo, no puede adjudicar hechos materiales en disputa porque esa tarea es del foro de primera instancia. *Meléndez González v. M. Cuebas*, 193 DPR 100, 114, 116 (2015).

### III.

La parte peticionaria nos solicita que revisemos la negativa del tribunal de instancia de declarar sin lugar su solicitud de sentencia sumaria parcial. Luego de revisar de *novo* el expediente ante nuestra consideración, colegimos que nuestra intervención es necesaria, porque un análisis de la totalidad de la prueba nos convence de que no existe controversia de hechos esenciales que impida desestimar sumariamente la demanda.

El foro primario concluyó que había controversia en cuanto a si el viaje realizado por el señor Rosario Durán se llevó a cabo durante horas laborables. No estamos de acuerdo. Surge del expediente que, bajo la creencia de que este no se iba de viaje, se le

convocó a trabajar el sábado, 24 de abril de 2021.[25] Sin embargo, el recurrido manifestó que no podía presentarse porque se iba de viaje. Por otra parte, a pesar de que el viaje que nos ocupa se realizó durante un fin de semana, ante la emergencia de salud suscitada por el COVID-19, el protocolo de FirstBank requería que el empleado que realizara un viaje estuviera fuera de su trabajo por un periodo de cinco (5) días. Así, pues, el viaje realizado por el señor Rivera Durán tuvo el efecto de que este no pudiese presentarse a trabajar del 26 de abril al 3 de mayo de 2021.[26]

Igualmente, el tribunal de instancia aseveró que había disputa sobre si las labores realizadas por el recurrido en la institución bancaria podían realizarse de forma remota durante el tiempo de aislamiento establecido en el protocolo. Sin embargo, el referido protocolo indicaba que, si el empleado era elegible para trabajo remoto, debía discutir y acordar con el supervisor el plan de trabajo durante el periodo de asilamiento.[27] Es decir, que aún si el recurrido podía realizar sus labores de forma remota, la institución bancaria debía autorizar que el trabajo se completara remotamente, y, a su vez, el supervisor debía aprobar el plan de trabajo durante este tiempo. De la prueba presentada, no surge que el señor Rosario Durán era elegible para trabajar de manera remota, o que su anterior supervisor aprobó un plan de trabajo remoto durante el tiempo que estuvo fuera.

Por otra parte, entendemos que el foro *a quo* incidió al determinar que en el presente caso existía controversia en cuanto a si el despido del recurrido se justificaba conforme a la Ley y la jurisprudencia aplicable. Según reseñamos, la Ley Núm. 80, *supra*, establece que el despido de un empleado estará justificado si: (1) ha

---

[25] Véase, apéndice del recurso, págs. 337-338.
[26] Íd., págs. 287, 354 y 368.
[27] Íd., pág. 368.

exhibido un patrón de conducta impropio o desordenado; (2) no ha cumplido con sus labores de manera eficiente; (3) ha realizado tarde o negligentemente su trabajo, o en violación a las normas aplicables, o (4) ha violado reiteradamente aquellas reglas y reglamentos razonablemente establecidos para la operación del establecimiento.

La prueba presentada, claramente demostró, que se le instruyó al señor Rosario Durán que no debía irse de viaje, puesto que, conforme al protocolo de FirstBank ante el COVID-19, debía estar fuera de su trabajo por un periodo de cinco (5) días.[28] No importando las instrucciones impartidas, el recurrido compró un pasaje y se fue de viaje.[29] Ello, tuvo el efecto de que este tuviese que ausentarse a su trabajo del 26 de abril al 3 de mayo de 2021.[30] A su vez, cuando el señor Rivera Durán fue convocado a trabajar el 24 de abril de 2021, no pudo presentarse por razón del viaje.[31]

Surge, asimismo, de la prueba que, aunque el protocolo daba la opción de que el periodo de asilamiento se le descontara al empleado de su licencia de vacaciones o que el supervisor aprobara un plan de trabajo remoto, el recurrido no contó con ninguna de las anteriores autorizaciones.[32] Incluso, en la deposición que se le tomó, el 24 de abril de 2023, admitió que ningún empleado puede tomar vacaciones cuando quiera, porque las tenía que aprobar el banco.[33] De otra parte, afirmó mediante su testimonio, que conocía del protocolo de viaje de FirstBank antes de partir, el 23 de abril de 2021, al estado de Florida para el Día Nacional de la Salsa.[34] Es evidente, pues, que las acciones del señor Rivera Durán constituyeron un acto de insubordinación.

---

[28] Véase, apéndice del recurso, págs. 354 y 368.
[29] Íd., págs. 330-334.
[30] Íd., págs. 287 y 354.
[31] Íd., pág. 337.
[32] Íd., pág. 368.
[33] Íd., pág. 341.
[34] Íd., pág. 338.

Además, es menester señalar que el despido del recurrido no fue una primera sanción, pues previo a los eventos que nos ocupan, este fue amonestado en dos ocasiones. La primera amonestación se impartió por una serie de violaciones al código de ética, entre ellas: tener un segundo empleo sin haber notificado a Recursos Humanos, no reportar ausencias y tardanzas, comportarse de manera irrespetuosa y mentir. En la misma, se le advirtió que, si continuaba con el anterior comportamiento, se podrían tomar medidas más severas, como la terminación del empleo.[35] La segunda amonestación se impartió luego de que incurriera en unas faltas a las responsabilidades de su puesto. Igualmente, se le apercibió que, de repetirse la conducta, se tomarían medidas disciplinarias.[36]

De lo anterior se desprende que el señor Rivera Durán mientras fue empleado de FirstBank se comportó inapropiadamente, fue negligente con su trabajo y no lo realizó de forma eficiente, y reiteradamente incumplió con las reglas establecidas. Así, pues, concluimos que su cesantía estuvo justificada.

**IV.**

Por lo antes expuesto, se expide el auto solicitado y se revoca la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] Véase, apéndice del recurso, pág. 381-382.
[36] Íd., pág. 383.

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| VÍCTOR GABRIEL ROSARIO DURÁN<br><br>Recurrida<br><br>v.<br><br>FIRST BANK PUERTO RICO Y OTROS<br><br>Peticionarios | KLCE202400055 | CERTIORARI<br>Procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2022CV03167 (505)<br><br>Sobre:<br>DESPIDO INJUSTIFICADO (LEY NÚM. 80) Y OTROS |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

### VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

Primeramente, se nos pide la revocación de una resolución emitida en un proceso sumario al amparo de la Ley de Procedimiento Sumario de Reclamaciones Laborales, Ley Núm. 2 de 17 de octubre de 1961.

En *Dávila, Rivera v. Antilles Shipping*, 147 DPR 483, 494 (1999), el Tribunal Supremo contestó la interrogante de si la economía procesal, entendida como la necesidad de evitar el paso por todo el proceso judicial cuando se haya cometido un **error perjudicial** por medio de una resolución interlocutoria, tiene mayor peso que el carácter sumario que los legisladores le imprimieron al proceso instituido por la Ley Núm. 2. Concluyó que no. Reconoció la primacía de la naturaleza y esencia del procedimiento implementado por la Ley Núm. 2, así como la política pública de abreviar el procedimiento de forma que sea lo menos oneroso posible para los obreros.

De igual manera puntualizó que, la antedicha norma, no era absoluta, pues solo se alteraría cuando la resolución interlocutoria que se pretendiese impugnar hubiese sido dictada de forma ultra

vires, sin jurisdicción; en aquellos casos extremos en los cuales los fines de la justicia requiriesen la intervención del foro apelativo; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, dispusiera del caso, o su pronta disposición, en forma definitiva o cuando dicha revisión inmediata tuviese el efecto de evitar una "grave injusticia." *Dávila, Rivera v. Antilles Shipping*, supra, pág. 497. Sostengo que los criterios generales, en este caso, son suficientes para disuadir nuestra intervención en el proceso sumario. Particularmente cuando la opinión mayoritaria adjudica hechos materiales y esenciales en disputa, tarea reservada para el foro de primera instancia.

Ante lo antes expresado, hubiese denegado el recurso, por lo que disiento de la opinión mayoritaria.

En San Juan, Puerto Rico, a 29 febrero de 2024.


Grace M. Grana Martínez
Jueza del Tribunal de Apelaciones